Caryn FRIEDMAN, Michael Hojnoski, Jean–Guy Dahan, Darrell DeJong, Frederick W. Goff, Jeffrey Grill, Roy Hammond, Roberto Homedes, Weley Hough, David Kang; Tom Lisk, John E. Miertschin, Donald A. & Linda M. Pahl, Lerow Rosewitz, Lorraine Schreiber, Frank Shorr, Nick Soulis, Robert Verity, Ronald Washington, Beryl J. Weinstein, Charles C. Anderson, John Delaney, Elliot Heller, C.M. Jayashankar, A. Hobart Leeds, Robert McKay, Rick Napholz, Michael O'Conner, Pat O O'Donnell, Michael K. Pawley, Timothy Jay Turner and Gary Masner, Plaintiffs,

v.

ALCATEL ALSTHOM, Net Acquisition Inc., Serge Tchuruk, Jean–Pierre Halbron, Amrose Roux, Rand V. Araskog, Daniel Bernard, Philippe Bissara, Paola Cantarella, Guy Dejouany, Jacques Friedman, Noel Goutard, Francois De Laage De Meux, Pierre–Louis Lions, Thierry De Loppinot, Bruno Vaillant, Marc Vienot and Helmut Werner, Defendants.

C.A. No. 16650.

Court of Chancery of Delaware, New Castle County.

Submitted: Nov. 4, 1999.

Decided: Dec. 10, 1999.

Norman M. Monhait of Rosenthal Monhait Gross & Goddess, Wilmington, Delaware; of Counsel: Milberg Weiss Bershad Hynes & Lerach, New York City; Schiffrin Craig & Barroway, Bala Cynwyd, Pennsylvania, for Plaintiffs.

Anthony W. Clark of Skadden, Arps, Slate, Meagher & Flom, Wilmington, Delaware; of Counsel: Robert E. Zimet and Lea Haber Kuck of Skadden, Arps, Slate, Meagher & Flom, New York City, for Defendants.

## OPINION

STEELE, V.C.

A French company created a Delaware subsidiary to effect a merger with an American corporation. Plaintiffs, former shareholders in the American corporation

subsumed by the French company as a result of the merger, bring this action against the French company, its Delaware subsidiary, and directors and officers of the French company alleging that defendants violated federal securities laws by filing a materially misleading proxy/prospectus with the Securities and Exchange Commission ("SEC").

Defendants ask that I dismiss or stay this action. They argue that this Court lacks personal jurisdiction over both Alcatel and the Individual Defendants. They maintain that plaintiffs' filed this action simultaneously with a now consolidated federal action, which mandates that the Court analyze their motion under the doctrine of *forum non conveniens.* Once analyzed under Delaware's view of the doctrine, they argue this action should be stayed or dismissed. I conclude that:

1. The Delaware action must be considered filed simultaneously with an action containing identical claims in the federal system; and,

2. The federal action has now been consolidated with over twenty similar federal actions and has proceeded further than this action; and,

3. The Delaware action before me contains not one state claim; and,

4. The defendant can not persuade me that it faces undue, significant or overwhelming hardship in defending the Delaware action.

Therefore, consistent with the dictates of our Supreme Court for analysis under *forum non conveniens,* I stay, but do not dismiss, this action in deference to the very similarly based consolidated actions pending in federal district court.

## I. BACKGROUND

Alcatel Alsthom ("Alcatel"), a French corporation headquartered in Paris, is a world leader in providing equipment and systems for the telecommunications, energy and transport sectors. Although its shares are traded primarily at the Paris Bourse, Alcatel does offer American Depository Shares ("ADSs"), which can be bought in the United States on the New York Stock Exchange.

DSC Communications, Inc. ("DSC") designs, develops, manufactures and markets digital switching, access, transport and private network systems products for the worldwide telecommunications marketplace. DSC stock formerly traded on the NASDAQ National Market System.

During the summer of 1997, Alcatel initiated contact with DSC in order to discuss the possibility of a merger. On February 27, 1998, Alcatel offered to purchase the outstanding common stock of DSC. DSC rejected Alcatel's initial offer, but over the next several months, Alcatel and DSC continued negotiating over price and terms. On May 5, 1998, in the midst of the negotiations, Alcatel issued a press release announcing that its sales rose 11% during its first quarter due in significant part to the opening of Europe's phone market to private competition.

On June 4, 1998, Alcatel and DSC issued a joint press release stating that they had entered into a definitive agreement under which Alcatel would acquire DSC in a stock-for-stock transaction. In press releases following the announcement of the merger agreement, Alcatel stated that the transaction would provide increased value to the DSC shareholders as Alcatel had long-term growth potential.

On July 28, 1998, defendants disseminated a Proxy/Prospectus to DSC shareholders seeking approval of the proposed merger. Likewise, Alcatel filed a Registration statement, which incorporated the Proxy/Prospectus, with the SEC. In connection with the merger, Alcatel converted over 119 million shares of DSC common stock into approximately 97 million Alcatel ADSs. To effect the merger, Alcatel created a Delaware subsidiary called Net Acquisition, Inc.

Plaintiffs now claim this Proxy/Prospectus materially misled the reader by and in the manner in which it described: (1) the strength of Alcatel's European operations; (2) Alcatel's international operations; (3) the risks Alcatel was then experiencing in its business operations. Allegedly, Alcatel failed to disclose material information (e.g., the adverse impact of the economic crises in Russia and the Pacific Rim on Alcatel, that Alcatel's systems were inefficient, etc.).

On August 27, 1998, DSC shareholders approved the proposed merger. On September 17, 1998, Alcatel disclosed that it would "be adversely impacted by the sharp investment cuts recently decided by some traditional operators and the deepening of its Southeast Asia and Russian crisis." Alcatel's ADSs declined 38% immediately following the disclosure.[1] The decline presumably shocked Alcatel and the DSC shareholders that had agreed to exchange their shares for shares of Alcatel.

As one now comes to expect when a stock drops 38% in one day, numerous parties filed lawsuits promptly in various venues. The Federal District Court for the Southern District of New York accepted the first-filed action at 1:24 P.M. EST on September 18, 1998.[2] An action was also filed in the Federal District Court in the Northern District of Texas on September 18, 1998, but the exact time of that filing is unknown as that court date-stamps without including time of day.[3] A few hours after the Southern District of New York filing, and maybe after the Northern Texas filing as well, plaintiffs filed their complaint in this Court at 4:26 P.M. EST. Twenty-four other actions, all filed in federal court, followed. All the complaints, including the one filed in this Court, *assert only federal claims*. At least twenty of those actions (including the one in this Court) are purported class actions claiming to represent the same class of plaintiffs.

The Judicial Panel on Multidistrict Litigation consolidated all twenty-six of the federal actions and transferred them to the United States District Court for the Eastern District of Texas (the "Consolidated Federal Action"). At a hearing on May 3, 1999, the district court judge appointed a lead plaintiff in the Consolidated Federal Action and entered a scheduling order providing for the filing of a consolidated complaint, a briefing schedule for motions to dismiss, and a schedule for class certification. Defendants have since filed a Fed. R.Civ.P. 12(b)(6) motion to dismiss. That motion is fully briefed but the district court has yet to rule on its merits.

## II. CONTENTIONS

In the Consolidated Federal Action, plaintiffs assert claims arising under Section 11, 12 and 15 of the Securities Act of 1933, Rule 10b–5 (17 C.F.R. § 240.10B–5), and Sections 10, 14 and 20 of the Securities Exchange Act of 1934. The counts alleged in each federal complaint, which combined constitute the Consolidated Federal Action, vary slightly, but each federal complaint alleges violations of the just-listed federal securities laws.

Similarly, the Delaware action alleges *only violations of the federal securities laws*. Plaintiffs allege three counts in the complaint before this Court: (1) violations of Section 11 of the Securities Act, (II) violations of Section 12(a)(2) of the Securities Act, (III) violations of Section 15 of the Securities Act. Plaintiffs seek equitable relief in the form of "rescission on Count II to the extent [members of the purported

---

**1.** As of November 1999, Alcatel's stock had returned to approximately the same value it had immediately preceding its steep decline in September 1998.

**2.** *See Berger v. Alcatel Alsthom, et al.*, 98–CV–6627 (S.D.N.Y., filed Sept. 18, 1998).

**3.** *See Farwell v. Alcatel Alsthom, et al.* 3:98CV2212 G (N.D. Tex., filed Sept. 18, 1998).

class] still hold Alcatel ADSs, or if sold, awarding rescissory damages in accordance with Section 12(a)(2) of the Securities Act." The complaint clearly focuses, however, on money damages.

Furthermore, plaintiffs do not allege any breaches of fiduciary duty or any action inconsistent with the merger statute. Plaintiffs maintain that jurisdiction is nonetheless proper in Delaware because the disclosure claims arise out of a merger consummated under the laws of this State.

## III. LEGAL STANDARD FOR MOTION TO DISMISS

 In evaluating Defendants' Motion to Dismiss, I assume the truthfulness of all well-pleaded, non-conclusory allegations found in the Complaint and extend the benefit of all reasonable inferences that can be drawn from the pleading to the non-movant, plaintiff.[4] To dismiss a claim, I must find plaintiff has either utterly failed to plead facts supporting an element of the claim or that under no reasonable interpretation of the facts alleged in the Complaint (including reasonable inferences) could plaintiff state a claim for which relief might be granted.[5] Notwithstanding Delaware's permissive pleading standard, I am free to disregard mere conclusory allegations made without specific allegations of fact to support them.[6]

**4.** *Loudon v. Archer–Daniels–Midland Co.*, Del. Supr., 700 A.2d 135, 140 (1997).

**5.** *Delaware State Troopers Lodge v. O'Rourke*, Del. Ch., 403 A.2d 1109, 1110 (1979) ("A complaint should not be dismissed upon such a motion unless it appears to a certainty that under no set of facts which could be proved to support the claim would the plaintiff be entitled to relief.")

**6.** *Wolf v. Assaf*, Del. Ch., C.A. No. 15339, mem. op., 1998 WL 326662, at *1, Steele, V.C. (June 16, 1998).

**7.** 10 Del. C. § 3104(c).

**8.** *Hercules, Inc. v. Leu Trust & Banking, Bahamas Ltd.*, Del.Supr., 611 A.2d 476, 480 (1992)

## IV. ANALYSIS

### A. Should this Court exercise personal jurisdiction over Alcatel and/or the Individual Defendants?

Defendants argue that Delaware's laws and statutes do not authorize personal jurisdiction over Alcatel and that the assertion of personal jurisdiction over the Individual Defendants violates the Due Process Clause of the Fourteenth Amendment.

Delaware's so-called long-arm statute provides in pertinent part:

[A] court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent: .. Transacts any business or performs any character of work or service in this State.[7]

 Delaware courts have construed the long-arm statute very broadly in order "to confer jurisdiction to the maximum extent possible under the Due Process Clause." [8] A "single act done or transaction engaged in by the nonresident within the State" is sufficient to establish jurisdiction.[9] To meet the "single act" provisions of the long-arm statute, the conduct in Delaware must be the source of the claim at issue.[10] The formation and operation of a Delaware subsidiary may constitute the transaction of business in Delaware for the purposes of the long-arm statute.[11]

*cert. dismissed*, 507 U.S. 1025, 113 S.Ct. 1836, 123 L.Ed.2d 463 (1993).

**9.** *Eudaily v. Harmon*, Del.Supr., 420 A.2d 1175, 1180 n. 4 (1980).

**10.** *See, e.g., Sears, Roebuck & Co. v. Sears Plc*, 744 F.Supp. 1297, 1302–03 (D.Del.1990).

**11.** *See Arnold v. Society for Savings Bancorp, Inc.*, Del. Ch., C.A. No. 12883, mem. op. at 6, Chandler, V.C., 1993 WL 526781 (Dec. 17, 1993); *Red Sail Easter Limited Partners, L.P. v. Radio City Music Hall Productions, Inc.*, Del. Ch., C.A. No. 12036, mem. op. at 4–5, Allen, C., 1991 WL 129174 (July 10, 1991); *Kahn v. Lynch Comm. Systems, Inc.*, Del. Ch., C.A. No. 8748, mem. op. at 8–9, Berger, V.C., 1989 WL 99800 (Aug. 24, 1989); *Sternberg v. O'Neil*,

■ By creating a Delaware subsidiary to effect the merger at issue, Alcatel's "single act" in Delaware is sufficiently linked to the source of this claim to permit this Court to exercise jurisdiction over Alcatel for the purposes of this action. Alcatel could not have merged with DSC, an American corporation, without creating an American subsidiary into which DSC could merge. Alcatel voluntarily chose Delaware as the place of incorporation for that subsidiary. All the claims in this action, and the Consolidated Federal Action for that matter, spring from the merger effected by that Delaware subsidiary.

■ Defendants also argue that personal jurisdiction over the Individual Defendants would be unconstitutional. In response, plaintiffs cite two cases where federal courts found jurisdiction over foreign residents who were tangentially involved in SEC filings that formed the bases for the respective actions.[12] Neither case holds that a state court would have jurisdiction over a state action like the present one that alleges only breach of the federal securities laws. If relevant at all here, plaintiffs' citation of these federal cases only serves to bolster defendants' argument that jurisdiction should be exercised by a federal court.

For their part, defendants cite a string of Delaware cases that failed to find jurisdiction over directors of Delaware corporations sued by their respective shareholders for federal securities law violations.[13] Defendants also remind me that, in the context of a double derivative action against a Delaware corporation and its foreign parent, the Supreme Court has affirmed this Court's decision dismissing a complaint against individual nonresident defendants who are not directors of the Delaware corporation.[14] The Individual Defendants are all directors or officers of Alcatel.[15] Plaintiffs have not alleged that any Individual Defendant is a director or officer of the Delaware subsidiary, DSC.

Accordingly, while I find that this Court does have jurisdiction over Alcatel, I do not find that the Individual Defendants have minimum contacts with Delaware that would justify the exercise of personal jurisdiction by this Court.

## B. Dismiss, Stay or Proceed after consideration of the Doctrine of *forum non conveniens?*

■ Defendants argue that this action should be dismissed or stayed under the doctrine of *forum non conveniens.* Under that doctrine, a court may decline to hear a case before it "whenever considerations

Del.Supr., 550 A.2d 1105, 1120 (1988) (stating, "a foreign corporation cannot use the laws of this State to govern the operations of its subsidiary and then, in a suit relating to the operation of its subsidiary, claim that jurisdiction in Delaware offends traditional notions of fair play"); *Rabkin v. Hunt Chem. Corp.,* Del. Ch., 547 A.2d 963 (1986) ("I find that Olin has the requisite minimum contacts with Delaware ..." Olin chose to incorporate a Delaware subsidiary and, through that subsidiary, avail itself of Delaware law to effectuate the merger attacked in this litigation).

12. Plaintiff cites *Itoba, Ltd. v. LEP Group PLC,* 930 F.Supp. 36, 40–41 (D.Conn.1996) (holding that despite the fact that foreign resident was not present at board meeting at which SEC Form 20–F was approved, evidence reflected his approval, creating personal jurisdiction in the U.S.); *Reingold v. De-*

*loitte Haskins & Sells,* 599 F.Supp. 1241, 1259 (S.D.N.Y.1984) (holding that Australian accounting firm knew or should have known that signing an audit opinion would lead to its incorporation into company's SEC filing, creating personal jurisdiction in the U.S. over the Australian firm).

13. *Van De Walle v. L.F. Rothschild,* Del. Ch., C.A. No. 9894, slip op. at 9, Steele, V.C., 1994 WL 469150 (Aug. 2, 1994); *Branson v. Exide Elecs. Corp.,* Del. Ch., C.A. No. 11536, slip op. at 5, Berger, V.C., 1993 WL 328087 (Aug. 11, 1993), *rev'd on other grounds,* Del.Supr., 645 A.2d 568 (Apr. 25, 1994); *In re USACafes, L.P. Litig.,* Del. Ch., 600 A.2d 43, 53–54 (1991).

14. *Sternberg v. O'Neil,* Del.Supr., 550 A.2d 1105, 1127 (1988).

15. Compl., ¶ 4.

of convenience, expense and the interests of justice dictate that litigation in the forum selected by the plaintiff would be unduly inconvenient, expensive and otherwise inappropriate." [16]

The *forum non conveniens* doctrine originated as an equitable remedy in the Scottish common law. American state courts and admiralty courts adopted the concept from the Scots.[17] The Scots created the doctrine to prevent undue hardship arising from the then common practice of seizing foreign assets in order to force foreigners into Scottish courts.[18] To dismiss an action on the basis of the doctrine, the Scottish courts not only required a demonstration that the forum was inconvenient, but also that "there is some other tribunal, having competent jurisdiction ... in which the case may be tried more suitably for the interests of all the parties and for the ends of justice." [19]

■ Before engaging in a *forum non conveniens* analysis, however, a Delaware court must first determine whether application of the so-called first-filed rule is more appropriate.[20] The first-filed rule applies when a party seeks to stay or dismiss a Delaware action in favor of a first-filed action pending in federal or another state jurisdiction.[21] In contrast, the doctrine of *forum non conveniens* applies when there is no other action with similar parties involving similar issues pending in another jurisdiction, or when the action filed elsewhere is filed later than or contemporaneously with the filing in Delaware.[22]

■ A key inquiry, therefore, is to determine whether this action or the Consolidated Federal Action could be considered first-filed. The plaintiffs in the Southern District of New York filed their complaint several hours before the plaintiffs filed their complaint in this Court.[23] When the difference in time is so close this Court generally considers the competing actions to have been filed simultaneously.[24] The

16. *Sumner Sports, Inc. v. Remington Arms Co.*, Del. Ch., C.A. No. 11841, Chandler, V.C., 1993 WL 67202 (Mar. 4, 1993), mem. op. at 15 (quoting *Monsanto Co. v. Aetna Cas. & Sur. Co.*, Del Super., 559 A.2d 1301, 1304 (1988)).

17. Peter Carney, *International Forum Non Conveniens: "Section 1404.5"—A Proposal in the Interest of Sovereignty, Comity, and Individual Justice*, 45 Am. U.L.Rev. 415, 424–25, (1995), *citing, Gulf Oil Corp., v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) (citing *Logan v. Bank of Scotland*, [1906] 1 K.B. 141).

18. Carney, *supra, citing*, Alexander Reus, *Judicial Discretion: A Comparative View of the Doctrine of Forum Non Conveniens in the United States, the United Kingdom, and Germany*, 16 Loy. L.A. Int'l & Comp. L.J. 455, 459 (1994) (citing Andrew Dewar Gibb, The International Law of Jurisdiction in England and Scotland 212–13 (1926)).

19. Carney, *supra, quoting Sim v. Robinow*, 1892 Sess. Cas. (R.) 665, 668 (Scot. 1st Div.).

20. *See* DONALD J. WOLFE, JR. AND MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY, § 5–2, at 213 (1998) (discussing the competing analyses).

21. *McWane Cast Iron Pipe Corp. v. McDowell–Wellman Eng'g Co.*, Del.Supr., 263 A.2d 281, 284 (1970).

22. *Id.*

23. The Southern District of New York complaint was bundled with the other actions consolidated in the United States District Court for Eastern District of Texas. For the purposes of determining first-filed status, I consider the Consolidated Federal Action to be filed on the date on which the earliest consolidated individual federal action was filed. Therefore, the time and date of the filing in the Southern District of New York is imputed to the Consolidated Federal Action as a whole.

24. *See Texas Instruments, Inc. v. Cyrix Corp.*, Del. Ch., C.A. No. 13288, 1994 WL 96983, at *3–4, Jacobs, V.C. (Mar. 22, 1994) (actions treated as simultaneously-filed when five hours intervened between filing of competing complaints); *In re Chambers Dev. Co. Shareholders Litig.*, Del. Ch., C.A. No. 12508, mem. op. at 14, Chandler, V.C., 1993 WL 179335 (May 20, 1993) (treating actions filed within the same general time period as simultaneously-filed).

rationale for so doing stems from this Court's desire to avoid rewarding the winner of a race to the courthouse.[25] It is fair to classify what occurred in this case on September 18, 1998 as a sprint. I must therefore consider the Consolidated Federal Action and the present action to be simultaneously filed.

Since the actions must be considered simultaneously filed, neither action commands the high ground which would otherwise force the court to approach the analysis in a manner which defers to a plaintiff's choice of forum. I must, therefore, employ a traditional *forum non conveniens* analysis.

 In evaluating either a motion to dismiss or a motion to stay on the grounds of *forum non conveniens*, Delaware courts consider six factors: (1) the applicability of Delaware law in the action; (2) the relative ease of access to proof; (3) the availability of compulsory process for witnesses; (4) the pendency or non-pendency of any similar actions in other jurisdictions; (5) the possibility of a need to view the premises; and (6) all other practical considerations which would serve to make the trial easy, expeditious and inexpensive.[26] These six factors should be used as a guide to the Court's exercise of discretion.[27]

The Supreme Court has provided direction on how these six factors are to be utilized:

(i) Only in a rare case should a plaintiff's choice of forum be defeated in favor of a later-filed action in another jurisdiction; (ii) in order to prevail on a forum non conveniens motion, a defendant must establish, with particularity, that it will be subjected to undue hardship and incon-

venience if required to litigate in Delaware; (iii) the factors to be considered in evaluating a *forum non conveniens* motion are those [discussed above]; and (iv) a defendant must establish that one or more of [the discussed-above] factors actually causes such significant hardship and inconvenience.[28]

Despite occasional references to the trial courts' discretion, little room for exercising that discretion exists given the above strictures. At least where a party urges a court to stay or dismiss a Delaware action in favor of a later filed action in another jurisdiction, these standards make perfect sense. It is, in my view, a much less viable standard for analysis where actions can be deemed to be filed contemporaneously. The real issue when dealing with simultaneously filed actions seems to be whether the moving party seeks a dismissal or a stay, and, in either instance what is the burden of persuasion?

As Vice Chancellor Jacobs has explained so clearly in a contemporaneously issued opinion:

. . . the second issue (after determining that neither case is "first filed" and that a *forum non conveniens* analysis is required) is what standard or burden of persuasion applies . . . . [29]

Since Alcatel asks for dismissal *or* a stay, must Alcatel show undue, significant or overwhelming hardship *or* only that, on balance, the *Cryo–Maid* [30] factors preponderate in favor of a dismissal or a stay?

 If dismissal, then the question becomes whether any of the factors "establish that defendant[s] will suffer overwhelming hardship and inconvenience if

25. *Texas Instruments, Inc., supra* note 21, at *4.

26. *Miller v. Phillips Petroleum Co. Norway,* Del Supr., 537 A.2d 190, 202 (1988).

27. *Sumner Sports Inc. v. Remington Arms Co.,* Del. Ch., C.A. No. 11841, slip op. at 6, Chandler, V.C., 1993 WL 67202 (Mar. 4, 1993).

28. *Chrysler First,* 669 A.2d at 107.

29. *See HFTP Investments v. Ariad Pharmaceuticals,* Del. Ch., 752 A.2d 115 (1999).

30. *General Foods v. Cryo–Maid, Inc.,* Del. Supr., 198 A.2d 681, 684 (1964).

forced to litigate in Delaware." [31] The burden is on the defendants to prove hardship and inconvenience.[32] "Absent such a showing, plaintiff[s'] choice of forum must be respected." [33] When, on the other hand, a party seeks only to stay the contemporaneously filed action, the issue is simply "whether on balance, the *forum non conveniens* factors warrant the grant of a stay." [34] Where there are simultaneous filings, it seems to me that more discretion to dismiss should be placed in the hands of trial judges to determine whether the courts and the public's interest really necessitates trial in multiple jurisdictions given the limited resources of the courts and the enormous expense of litigation. Nevertheless, because that discretion does not seem to be as broad as some might think it should be, I address the *forum non conveniens* factors to determine whether the defendant has demonstrated undue, overwhelming or significant hardship in defending—which would merit a dismissal— or that, on balance, the *Cryo–Maid* factors warrant a stay, or neither.

## 1. Applicability of Delaware law

 Delaware law is not implicated in any of the three counts plaintiffs allege in their complaint. Each of plaintiffs' counts reference only federal securities laws. This is not a case where plaintiffs' claims raise substantial, novel or for that matter *any* fiduciary duty or governance questions that would be best resolved in a Delaware court.[35] I must add, however, that the ap-

plication of Delaware law is not conclusive in a *forum non conveniens* analysis.[36] Furthermore, "Delaware courts are accustomed to deciding controversies in which the parties are non-residents of Delaware and where none of the events occurred in Delaware." [37]

## 2. Relative ease of access to proof

The fact that witnesses and evidence are located far from Delaware may support a finding of hardship. But, when defendants possess substantial resources this burden is "substantially attenuate[d]." [38]

Alcatel is a large multi-national corporation. It has adequate financial resources that would enable it to easily transport witnesses and documents from France to Delaware. If Alcatel can logistically defend against the Consolidated Federal Action in Texas, it can certainly defend the complaint in Delaware. But should it be forced to defend both simultaneously?

My reading of the current Delaware cases suggest that I can not simply conclude that it is obviously wasteful and duplicative to require Alcatel to defend both an action in Delaware and the Consolidated Federal Action in Texas. It appears that in order to grant an outright dismissal that I must conclude that Alcatel would suffer "undue hardship and inconvenience" if required to litigate in Delaware. It is not entirely clear to me whether "undue," "significant" and/or "overwhelming" hardship are the same.[39] It *is* clear to me that the

---

31. *Id.* at 108.

32. *ANR Pipeline Co. v. Shell Oil Co.*, Del. Supr., 525 A.2d 991, 992 (1987).

33. *Chrysler First,* 669 A.2d at 108.

34. *HFTP Investments, supra,* at p. ——.

35. *See MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc.*, Del. Ch., C.A. No. 8126, slip op. at 3, Walsh, J., 1985 WL 21129 (October 9, 1985) (noting that actions raising "novel and substantial issues of Delaware corporate law" are best resolved in Delaware courts).

36. *Jim Walter Corp. v. Allen*, Del. Ch., C.A. No. 10974, slip op. at 10, Allen, C., 1990 WL 3899 (Jan. 12, 1990).

37. *Taylor v. LSI Logic*, Del.Supr., 689 A.2d 1196, 1199 (1997).

38. *Monsanto Co. v. Aetna Casualty & Surety Co.*, Del.Super., 559 A.2d 1301, 1307 (1988).

39. It appears to me that the various cases cited throughout this Opinion regard all three phrases to be interchangeable.

federal system has found consolidation of multiple federal actions to best suit the public's interest, the parties' interest and judicial economy and efficiency. To force Alcatel to litigate in Delaware in the face of such a finding would create some significant difficulty for Alcatel and would make this Court appear indifferent to that difficulty, if not outright foolish under the circumstances. Nevertheless, since I can not find, from this record, that Alcatel would suffer an undue, significant or overwhelming hardship by having to defend both this action and the Consolidated Federal Action, this factor does not constitute a basis for dismissal.

### 3. Compulsory process

For this prong, I must evaluate whether "another forum would provide a substantial improvement as to the number of witnesses who would be subject to compulsory process." [40] At the same time, I acknowledge that "one Court will not attract more out of state witnesses to voluntarily appear than another Court." [41]

All of the defendants are in France as are most of the witnesses and documents. There is no dispute, however, that somewhere in the United States is the appropriate place to litigate plaintiffs' claims. As between this Court and the federal district court in Texas, there would seem to be no difference in the respective availability of compulsory process. Accordingly, I regard this prong to be a non-factor.

### 4. Pendency of similar actions

The Consolidated Federal Action and the action before this Court contain very similar claims. All of the defendants named here, except for Net Acquisition,[42] are also defendants in the Consolidated Federal Action. The Consolidated Federal Action is more procedurally advanced and implicates virtually identical factual and legal issues. Efficiency would be achieved if I simply deferred to the federal court in Texas and dismissed this action outright. Lamentably, the answer is not quite so simple—I can not dismiss this action simply because it is the obviously rational action to take. I can only dismiss if Alcatel has shown "overwhelming hardship and inconvenience." The mere existence of even consolidated litigation in another jurisdiction does not establish a hardship to litigating in Delaware.

### 5. Need to view the premises

This factor is not applicable and is given no weight.

### 6. Other practical considerations

Under this prong, Delaware courts have examined a wide array of considerations including judicial economy,[43] the motives of the parties in filing suit in the respective jurisdictions,[44] and public interest.[45]

The Consolidated Federal Actions are more procedurally advanced than the action in this Court. I am certain the federal district court will not defer to this Court, nor do I believe it should. As all the claims focus on alleged violations of the federal securities laws, the federal district court (or perhaps courts) will rightfully handle the matter as expeditiously as possible without regard for any similar state actions. To one concerned with judicial econ-

---

**40.** *Mt. Hawley Ins. Co. v. Jenny Craig, Inc.,* Del.Super., 668 A.2d 763, 769 (1995).

**41.** *Monsanto,* 559 A.2d at 1308.

**42.** On December 8, 1998, Net Acquisition filed a motion to dismiss on the grounds that prior to the filing of this action, it ceased to exist as a legal entity. Plaintiffs never responded to Net Acquisition's motion, and it is still pending.

**43.** *See Id.*

**44.** *See GTE Mobilnet, Inc. v. Nehalem Cellular, Inc.,* Del. Ch., C.A. No. 13072, 1994 WL 116194, at *5, Chandler, V.C. (Mar. 17, 1994).

**45.** *See Monsanto,* Del. Super, 559 A.2d at 1314–15.

omy, it makes little sense to duplicate the efforts of the federal district court.[46]

As to why the plaintiffs filed in Delaware, I can not know for certain. I can, however, note that plaintiffs have utterly failed to persuade me how the relief they seek in this Court differs from the relief the federal court could provide the same class of plaintiffs in the Consolidated Federal Action.

Policy concerns are the most pivotal here. Analysis of public interest in this suit favors deference to the federal court. This case solely concerns alleged omissions and false statements made in SEC filings. Congress created the SEC intending that it would regulate the interstate exchange of securities. Therefore, the regulation of securities generally falls within the purview of federal regulators who look to the federal courts for enforcement. Conversely, the citizens of Delaware have little, if any, interest in the present matter. Alcatel created its only connection to Delaware by forming Net Acquisition, a Delaware corporation. While that contact should by no means be lightly regarded, and may rightly be the basis for jurisdiction, the fact remains that this case focuses exclusively on the application of federal securities law, not a defect in the formation of Net Acquisition, a failure to comply with Delaware corporate law or even a nuance suggesting a departure from acceptable standards of corporate governance.

"Historically, federal law has regulated disclosures by corporate directors into the general interstate market." [47] The federal government enacted the Securities Act of 1933 [48] and the Securities Exchange Act of 1934 [49] vesting authority in the SEC to regulate these disclosures. Our Supreme Court has held that there is "no legitimate basis to create a new cause of action which would replicate, by state decisional law, the provisions of . . . the 1934 Act." [50] "In deference to the panoply of federal protections that are available to investors in connection with the purchase or sale of securities of Delaware corporations, [the Delaware Supreme] Court has decided not to recognize a state common law cause of action against the directors of Delaware corporations for 'fraud on the market'" [51] The respective roles played by federal and state courts in regulating corporate disclosures have been called "not only compatible but complementary" by the Supreme Court.[52]

Although not effective until several weeks after plaintiffs filed their complaint, the Securities Litigation Uniform Standards Act of 1998 [53] is worth mentioning if only as a clear indication of how the federal government envisions the same interplay. That statute requires securities class actions involving the purchase or sale of nationally traded securities, based upon false or misleading statements, to be brought exclusively in federal court under federal law. The statute contains two exceptions, however, which have come to be called the "Delaware carve-outs." [54] The first of these exceptions provides that an

---

46. "[C]ourts are more likely to dismiss a cause of action based on [*forum non conveniens* ] if other jurisdictions are hearing a similar case, because it would be a waste of judicial resources to prosecute the same action multiple times." *Ison v. E.I. DuPont de Nemours and Co.*, Del.Supr., 729 A.2d 832, 845 (1999).

47. *Malone v. Brincat*, Del.Supr., 722 A.2d 5, 12 (1998).

48. 15 U.S.C.A. § 77a (1933).

49. 15 U.S.C.A. § 78a (1934).

50. *Arnold v. Society for Savings Bancorp, Inc.*, Del.Supr., 678 A.2d 533, 539 (1996).

51. *Malone*, Del.Supr., 722 A.2d at 13, *quoting, Gaffin v. Teledyne, Inc.*, Del.Supr., 611 A.2d 467, 472 (1992).

52. *Malone*, Del.Supr., 722 A.2d at 13.

53. Securities Litigation Uniform Standards Act of 1998, Pub.L. No. 105–353, 112 Stat. 3227.

54. *Malone*, Del.Supr., 722 A.2d at 13.

"exclusively derivative action brought by one or more shareholders on behalf of a corporation" is not preempted; the second preserves the availability of state court class actions, when the law of that state already provides that corporate directors have fiduciary disclosure obligations to shareholders.[55]

The present action fits neither exception. By plaintiffs' own admission, their complaint does not allege any breaches of fiduciary duty or a "violation of the merger statute." [56] I also believe it fair to presume that had the plaintiffs facts which would support claims for breach of fiduciary duty under Delaware law or facts supporting a derivative action they would have incorporated those facts and claims into their complaint. Since Delaware's interests in its statutory or common law are not implicated, this action should be tried in the federal court consistently with the federal congress' expression of federal public policy.

Most importantly, in consolidating the federal actions, the federal courts have already implicitly held that it would constitute significant, if not overwhelming, hardship and inconvenience to require defendants to defend against various actions in various venues—all of which allege the same principal facts and claims. The federal courts' decision seems wise as it recognizes the parties' and public's interest in judicial economy; as such, I feel compelled to act as consistently with their findings as Delaware's current case law will allow.

 Since the Consolidated Federal Action is more advanced procedurally than the present case, none of the parties will suffer a hardship if this case is stayed in favor of that action. Staying this case will not leave plaintiffs without a remedy; adequate relief is available in the Consolidated Federal Action. Even under a *forum non conveniens* analysis, "comity and the necessities of an orderly and efficient administration of justice" must be considered. While a Delaware trial court's discretion may be limited on motions to dismiss contemporaneously filed actions in the absence of an undue burden upon the defendant, no such limitation applies to consideration of a motion to stay. "Given the profound distinction between those two remedies, that is hardly surprising. A dismissal ends a lawsuit; a stay only puts it on hold." [57] An analysis of the *Cryo–Maid* factors here may not demonstrate the "undue," "significant" and/or the "overwhelming" burden necessary to dismiss even a simultaneously filed action, but it does demonstrate factors which preponderate in favor of a stay. No factor compels going forward here and the majority cry out for deference to the ongoing federal litigation. The court's responsibility to do justice applies equally to the public's interest and *both* parties' interests. Compelling *circumstances* here demand respect for the federal courts' determination of federal laws especially where federal statute mandates that the federal system exercise exclusive jurisdiction. At a minimum, that respect should be reflected as a practical consideration in rendering appropriate justice.[58]

## V. CONCLUSION

For the reasons articulated above, defendants' motion to dismiss the action is *denied;* their motion to stay the action is

**55.** Securities Litigation Uniform Standards Act of 1998, *supra,* at § 101(a)(1) (amending Securities Act of 1933).

**56.** In their Brief in Opposition to Defendants' Motion to Dismiss or Stay this Action, at 24, plaintiffs argue, "[a]lthough this action does not allege any breaches of fiduciary duties or a violation of the merger statute, the disclo-

sure claims arise out of a merger consummated under the laws of this State, and therefore, the policies and interests of this State are directly implicated."

**57.** *HFTP Investments, supra,* at p. ——.

**58.** See § 5-1, p. 208 Delaware Chancery Court Practice Wolfe & Pittenger.

*granted*; the motion to dismiss the individual defendants is *granted*.